**SIGNED THIS: July 26, 2010**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LEADING EDGE PORK, LLC, | ) | No. 09-82789 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| LEADING EDGE PORK, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 09-8100 |
| | ) | |
| HERITAGE BANK OF CENTRAL ILLINOIS | ) | |
| and LONE HOLLOW, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**O P I N I O N**

This matter is before the Court on cross motions for partial summary judgment filed by each of the Defendants, Heritage Bank of Central Illinois (HERITAGE BANK or the BANK) and Lone Hollow, LLC (LONE HOLLOW). The Debtor, Leading Edge Pork, LLC (DEBTOR) is the Plaintiff but is not participating in the summary judgment process.

The two-count complaint seeks declaratory relief to resolve a priority dispute between the Defendants as to conflicting security interests in certain weaner pigs, and to determine whether LONE HOLLOW misapplied certain payments. The cross motions are "partial" because only the priority dispute is at issue.

**Summary Judgment Standards**

Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). The moving party must show there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). A factual issue is material only if resolving it might change the outcome. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). A factual issue is genuine if there is sufficient evidence for a reasonable jury to find in favor of the non-moving party on the evidence presented. *Id.*

In deciding a motion for summary judgment, the court may not make credibility determinations, weigh the evidence, or choose from among different reasonable inferences that might be drawn from the evidence. *Paz v. Wauconda Healthcare & Rehabilitation Centre, LLC,* 464 F.3d 659, 664 (7th Cir. 2006). The court must view the evidence in the light most favorable to the non-moving party. *Id.*

When parties file cross motions for summary judgment, each motion must be assessed independently; denial of one does not necessitate grant of the other. *Lexion Medical, LLC v. Northgate Technologies, Inc.,* 618 F.Supp.2d 896, 899 (N.D.Ill. 2009). The court must consider the evidence through separate lenses, always allowing the non-moving party

the benefit of all conflicts in the evidence and choices among reasonable inferences from that evidence. *Rhino Linings USA, Inc. v. Harriman,* 658 F.Supp.2d 892, 896 (S.D.Ind. 2009). If summary judgment is not granted, the court should nevertheless, to the extent practicable, determine what material facts are not genuinely at issue and issue an order to that effect, thus establishing those facts as the law of the case. Fed.R.Civ.P. 7056(d)(1).

**Factual and Procedural Background**

The DEBTOR filed for relief under Chapter 11 of the Bankruptcy Code on September 1, 2009. This adversary complaint was filed on October 5, 2009. According to the complaint, the DEBTOR is a swine "integrator" in that it purchases piglets from third party sources and pays other third party growers to raise them to market weight. The DEBTOR retains ownership of the swine while in possession of the growers.

HERITAGE BANK has a lending relationship with the DEBTOR that dates back almost a decade. According to its proof of claim, the DEBTOR owed HERITAGE BANK in excess of $5.0M as of the petition date. HERITAGE BANK has a valid, perfected non-purchase money security interest in the DEBTOR'S livestock.

LONE HOLLOW sold the DEBTOR weaner pigs in 2009 on credit and took back a purchase money security interest (PMSI) in the pigs it sold, creating a priority conflict with HERITAGE BANK. Section 9-324 of the Uniform Commercial Code permits a purchase money livestock lender to prime a prior perfected non-PMSI livestock lender if four conditions are met:

>    (1) the purchase-money security interest is perfected when the debtor receives possession of the livestock;

>    (2) the purchase-money secured party sends an authenticated notification to the holder of the conflicting security interest;
>
>    (3) the holder of the conflicting security interest receives the notification within six months before the debtor receives possession of the livestock; and
>
>    (4) the notification states that the person sending the notification has or expects to acquire a purchase-money security interest in livestock of the debtor and describes the livestock.

810 ILCS 5/9-324(d).

It is undisputed that LONE HOLLOW perfected its security interest in the weaner pigs it sold DEBTOR by filing a properly completed UCC-1 Financing Statement with the Illinois Secretary of State on June 9, 2009. Thereafter, LONE HOLLOW made five sales of pigs to DEBTOR, on or about June 10, 2009, June 12, 2009, June 15, 2009, June 29, 2009 and July 13, 2009. HERITAGE BANK concedes that the four conditions required by Section 9-324(d) are met with respect to the later three sales; only the first two, the June 10 and June 12 sales, are challenged.

Since the UCC-1 was filed on June 9, HERITAGE BANK concedes that the first of the four statutory conditions is satisfied. The latter three conditions are disputed. Two communications are at issue. An e-mail was sent on June 9, 2009, at 6:34 p.m. by Gary Donley on behalf of LONE HOLLOW. It was sent to HERITAGE BANK via a website maintained on behalf of HERITAGE BANK that is freely accessible by the general public and that offers website-based e-mail to the public as a convenient means of communicating with HERITAGE BANK. Donley named Scott Hedden as the intended recipient. Hedden is an officer of HERITAGE BANK who was identified to LONE HOLLOW by the DEBTOR

4

(through Wayne Peugh) as the person to receive notices concerning PMSI's. HERITAGE BANK concedes that Hedden is an appropriate contact person. The e-mail, in its entirety, states:

> Scott - Wayne Peugh gave me your contact information with regard to Purchase Money Security Interest for pigs delivered from Lone Hollow.

E-mails sent from the website are manually routed, by HERITAGE BANK employees, to the individual recipients' e-mail inboxes. The Donley e-mail was forwarded to Hedden at 8:13 a.m. on June 10, 2009.

The second communication sent by Donley to Hedden was mailed from Carthage, Illinois, on Friday, June 12, 2009. The single page document is on LONE HOLLOW letterhead, addressed to Scott Hedden at HERITAGE BANK'S address in Trivoli, Illinois, and is manually signed by Donley. It bears the heading: NOTICE OF PURCHASE MONEY SECURITY INTEREST. The entire substance of the notice is as follows:

> Ladies and Gentlemen:
>
> We understand that you hold a security interest in the inventory of Leading Edge Pork LLC ("Buyer").
>
> Pursuant to Section 9-324(b) of the Uniform Commercial Code, we hereby notify you that Lone Hollow LLC ("Seller") has acquired or expects to acquire a purchase money security interest in swine sold by Seller to Buyer at any time, wherever located, together with all proceeds thereof.
>
> Please call me at [phone number omitted] if you have any questions regarding this security interest.

The record contains no direct evidence as to the date and time the mailed notice was delivered to HERITAGE BANK by the U.S. Postal Service. The record does contain an e-mail from Hedden to Peugh sent Tuesday, June 16, 2009, at 4:15 p.m. that refers to the mailed notice as an attachment.

5

**ANALYSIS**

Donley's second communication to Hedden cites Section 9-324(b) instead of 9-324(d). The reference to subsection (b) is incorrect, but immaterial. Subsection (b), providing for a 5-year effective period for a priming notice, applies to a PMSI in inventory. Subsection (d), providing only a 6-month effective period, covers a PMSI in livestock that are farm products. What if the livestock are also the farmer's inventory? The question is resolved by application of the canon of statutory construction that the specific controls the general. *See Collinsville Community Unit School Dist. No. 10 v. Regional Bd. of School Trustees*, 218 Ill.2d 175, 201, 843 N.E.2d 273, 288 (2006). "Inventory" is more general than "livestock," which is often a particular subset of inventory. Thus, a seller of livestock is stuck with the shorter effective period in Section 9-324(d), like it or not, and may not weasel his way into the 5-year period in Section 9-324(b) by calling himself an inventory lender.[1] Nevertheless, there was no prejudice to HERITAGE BANK, so Donley's mistaken reference to Section 9-324(b) is immaterial.

A party seeking to enforce a statutory lien must strictly comply with the statutory requirements. *Meier v. Olivero*, 279 Ill.App.3d 630, 665 N.E.2d 858 (Ill.App. 3 Dist. 1996). Actual notice by the party against whom the lien is sought to be enforced does not excuse a failure of strict compliance. *Id.* Strict compliance by those parties seeking to obtain the protections offered by Article 9 of the Uniform Commercial Code has long been required. *See In re Dittmer*, 102 B.R. 143 (Bankr.C.D.Ill. 1988); *McCarthy v. BMW Bank of North America*, 509 F.3d 528, 530 (D.C.Cir. 2007). Moreover, the priming lien obtainable by a PMSI lender

---

[1] Presumably, the shorter period applicable to purchase money livestock lenders relates to the customary practice of long-term lenders making advances to farmers on an annual or semi-annual basis. So a PMSI livestock lender must send a new notice every 6 months to retain priming rights.

6

upon compliance with the conditions of section 9-324 is in derogation of the long-standing principle of "first in time, first in right" that otherwise protects the holder of a prior perfected security interest, which is an additional reason why strict compliance with the statutory conditions should be required. *See In re Superior Equipment, Inc.,* 195 B.R. 77, 79 (Bankr.C.D.Ill. 1996). Significantly, the district court for this district recently ruled that strict compliance with the noticing requirements of section 9-324(b) is required of a purchase money lender.[2] *In re Sports Pub., Inc.,* 2010 WL 750008 (C.D. Ill. 2010) (McCuskey, C.J.) (strict compliance required because a PMSI is an exception to general rule of first in time to perfect has priority). The district court rejected the suggestion that substantial compliance was sufficient, finding that giving the prior lender a copy of the security agreement which referred to "purchase money security interest" did not amount to the authenticated notice required by the statute.

There is no dispute about what Donley's June 9, 2009, e-mail says. Whether it satisfies the content requirements of section 9-324(d)(4) is a question of law that is properly decided at the summary judgment stage. In this Court's view, it does not. Most significantly, the e-mail fails to identify Leading Edge Pork, LLC, the BANK'S borrower, as the entity to whom purchase money credit sales of pigs were to be made. The reference to Wayne Peugh, an individual representative of the DEBTOR, is not an adequate substitute. Neither does the e-mail state that LONE HOLLOW has or expects to acquire a PMSI. The indefinite reference to Hedden as the contact person "with regard" to PMSI

---

[2] Other than the period for which the notice is effective, the requirements of subsections (b) and (d) of section 9-324 are identical.

is not sufficient. Under the strict compliance standard, the e-mail does not meet the content requirements of section 9-324(d)(4).[3]

The second notice, mailed by Donley to Hedden on June 12, 2009, clearly satisfies the content requirements of section 9-324(d)(4). Signed by Donley, it is also properly authenticated as required by section 9-324(d)(2). *See* 810 ILCS 5/9-102(a)(7). So the only possible issue is compliance with 9-324(d)(3). That subsection requires a comparison of the timing of two events: (1) the receipt of the notification by HERITAGE BANK, and (2) the receipt by the DEBTOR of the weaner pigs sold by LONE HOLLOW. In order to prevail, LONE HOLLOW must establish that the BANK received the notification before the DEBTOR received the pigs. The analysis permits no ties; if necessary, the timing must be established down to the minute that the event occurred.

The evidence in the record does not permit the timing of either event to be determined. The earliest that the mailed notice could have been received at the BANK is Saturday, June 13, 2009. Theoretically, it could have been brought to Hedden's attention that day for purposes of 810 ILCS 5/1-202(e)(1) or (f).

Although unlikely, it is also theoretically possible (as an inference that must be drawn in favor of LONE HOLLOW) that possession of the pigs sold by LONE HOLLOW on June 12, 2009, and even those sold on June 10, 2009, were not received by the DEBTOR until June 13, 2009, or later. The record contains no evidence of when the DEBTOR received possession of these two shipments.[4]

---

[3] The cryptic e-mail reads as if it was intended as a prelude to the sending, subsequently, of more specific information about the LONE HOLLOW PMSI. Of course, the intent or state of mind of Donley, as sender, and Hedden, as recipient, is immaterial. Compliance with section 9-324(d) is accomplished by the delivery of a written "notification," and is not dependent upon "actual knowledge" of the recipient. *See* 810 ILCS 5/1-202.

[4] Donley's affidavit, attached as an exhibit to Document No. 34, is direct evidence of when pigs sold on June 10 were loaded. The issue, however, is the time of delivery. Donley, apparently, has no personal knowledge of that fact. To the extent that an inference could be drawn (as Donley draws it) that delivery occurred at noon or in the afternoon on

So there are three unresolved facts that preclude summary judgment: (1) when did the DEBTOR receive the pigs sold on June 10 and 12, 2009, (2) when did Hedden become aware of the mailed notification, and (3) when did HERITAGE BANK receive the mailed notification.[5] If in fact, however, the pigs were received by the DEBTOR on or before June 12, 2009, then LONE HOLLOW'S priming claim must fail for lack of compliance with section 9-324(d)(3).

In light of these genuine issues of material fact, both motions must be denied. Nevertheless, the Court determines that section 9-324(d) is the provision applicable to the transactions in question. The Court further determines that the June 9, 2009, e-mail sent by Donley to Hedden does not constitute an authenticated notification that complies with the content requirements of section 9-324(d)(4). The Court further determines that the notice mailed by Donley to Hedden on June 12, 2009, satisfies the content requirements of section 9-324(d)(4) and the authentication requirement of section 9-324(d)(2).

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

June 10, the Court is not permitted to draw that inference (no matter how likely it is) at this stage, where all inferences must favor the non-moving party.

[5]Arguably, since the notification was addressed to Hedden, section 1-202(e)(2) applies rather than subsection (f), thus permitting the time of delivery to the BANK by the postal service to be the critical event.